# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

CHANCE DANIELS, individually, and on behalf
of all others similarly situated,

    Plaintiff,

v.

ROBINHOOD FINANCIAL, LLC,
ROBINHOOD SECURITIES, LLC,
ROBINHOOD MARKETS, INC.,
TD AMERITRADE, INC., CITADEL SECURITIES, LLC,
CHARLES SCHWAB & CO., INC., INTERACTIVE
BROKERS, LLC, OPEN TO THE PUBLIC
INVESTING, INC., AND WEBULL
FINANCIAL, LLC,

    Defendants.

---

## COMPLAINT AND DEMAND FOR JURY

---

Plaintiff Chance Daniels, by and through his attorneys The Hannon law Firm, LLC, for his complaint, individually and on behalf of all others similarly situated, alleges and states as follows:

## NATURE OF THE ACTION

1. Defendants Robinhood Financial LLC, Robinhood Securities LLC, Robinhood Markets, Inc., TD Ameritrade, Inc., Charles Schwab & Co, Inc., Interactive Brokers, LLC, Citadel Securities, LLC, Webull Financial, LLC, and Open to the Public Investing, Inc. ("Defendants") are online brokerage firms. Citadel is a "market maker" and Defendants' largest investor.

1

2. Defendants purposefully, willfully, and knowingly removed numerous stocks including but not limited to "GME", "BB", "NOK", "AMC", "BBBY", "EXPR", and "KOSS" (hereinafter "Subject Securities") from their trading platforms in the midst of an unprecedented stock rise thereby deprived retail investors of the ability to invest in the open-market, thereby manipulating the open-market.

3. In so doing, Defendants created a one-way buy-sell situation by which the only option of retail investors who had already purchased the above securities, and others, to sell/liquidate their holdings, thus depriving these stocks of buy liquidity to counter selling pressure by permitting purchase of the equity to take place. The end result was that all of these equities, and Plaintiff and other class members that held them suffered massive losses to their equity shares.

4. Taking advantage of this situation, hedge funds and equity firms performed a series of vertical ladder attacks against these equities throughout the day in order to hunt and strike stop loss orders and margin calls.

5. Numerous retail investors were forcefully stopped out of their positions by Defendants at incredibly low prices as a result of these attacks, suffering massive financial losses.

6. In so doing, Defendants created a situation in which the only entities which were permitted to purchase these equities were equity firm insiders and hedge fund operators, many of whom were leveraged heavily "short" against the equities and had a vested interest in seeing the equity prices depressed so that they could cover their short sales at a lower cost.

7. Prior to these brokerages taking this unilateral action, capital management groups such as Citadel who, as market makers, possessed real-time knowledge of retail investor orders

and stop loss sets, opened large "short" positions in these equities.

## PARTIES

8.     Plaintiff Chance Daniels was and is a citizen of the state of Colorado.  Plaintiff Daniels has accounts with Defendants Robinhood, TD Ameritrade, Webull, and Schwab. Plaintiff Daniels attempted to make trades with Robinhood, Schwab, and TD Ameritrade, but could not because these platforms blocked equity and options trading of the Subject Securities. In addition, he sold positions of GME to cut his losses.  As a direct and proximate result of Defendants' actions, Plaintiff Daniels suffered significant financial losses.

9.     Defendant Robinhood Financial LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025.  It is a wholly-owned subsidiary of Defendant Robinhood Markets, Inc. Defendant Robinhood Financial LLC is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC"). Defendant Robinhood Financial LLC acts as an introducing broker and have a clearing arrangement with its affiliate Defendant Robinhood Securities, LLC.

10.    Defendant TD Ameritrade, Inc. is a Delaware corporation with a place of business at 717 17th Street, Denver CO 80202.

11.    Defendant Open to the Public Investing, Inc. is a Delaware corporation with a place of business at 1 State Street, New York, New York 10004.

12.    Defendant Charles Schwab & Co, Inc. is a Delaware corporation with a place of business at 9800 Schwab Way, Lone Tree, CO 80124.

13.    Defendant Interactive Brokers, LLC is a Delaware corporation with a place of business at 2 Pickwick Plaza, Greenwich, CT 06830.

14. Defendant Citadel Securities, LLC is a Delaware corporation with an address of 425 Park Avenue, New York, NY 10022.

15. Defendant Webull Financial, LLC is a Delaware corporation with a place of business at 2 Pickwick Plaza, Greenwich, CT 06830.

16. The above-named corporate defendants herein referred to collectively as "Defendants."

## JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate claims of all members of the proposed class and subclass(es) are in excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members. Many members of the proposed class are citizens of a state different from Defendant.

18. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where Defendants, distributed, marketed, advertised, and sold the trading services which are the subject of the present complaint. Finally, venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) because a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District.

19. This Court has personal jurisdiction over Defendants because it is authorized to do business and does conduct business in Colorado, and because it has specifically marketed, advertised, and made substantial sales in Colorado, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through their promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

**FACTUAL ALLEGATIONS**

20. Defendants are online brokerage firms. Their customers place securities trades through the firms' websites, by using a web-based application (or "app"). Defendants (and others) permit customers to purchase and sell securities, including futures contracts.

21. On or around January 11, 2021, stocks in the Subject Securities began to rise.

22. At that time, Defendants allowed retail investors to trade GME on the open market.

23. On or about January 27, 2021 Defendants, in order to slow the growth of GME and other Subject Securities deprived their customers of the ability to use their service, after they abruptly, purposefully, willfully, and knowingly pulled the Subject Securities from their ability to trade on their applications, in turn meaning, retail investors could no longer buy or even search for the Subject Securities on Defendants' applications.

24. Defendants and others also restricted investors from performing any action other than selling/liquidating their holdings in these equities, forcing a massive sell action that drove the price of the equities down significantly in pre-market trading and throughout the day

25. Upon information and belief, Defendants' (and others) actions were done purposefully and knowingly to manipulate the market for the benefit of people and financial intuitions who were not Defendants' customers.

26. Since pulling the stock from Defendants' applications, the price of all of these equities has dropped precipitously by up to 70%.

27. Additionally Defendants deprived investors of "shorting" the Subject Securities in the hopes the price drops.

28. In summary, Defendants have completely blocked retailer investors from purchasing the Subject Securities for no legitimate reason, thereby depriving retailer investors

from the benefits of Defendants' services.

29.     The Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Defendants, espouses rule 5310 regarding "Best Execution and Interpositioning." Rule 5310.01 requires that Defendants "must make every effort to execute a marketable customer order that it receives promptly and fully." By failing to respond at all to customers' placing timely trades—and outright blocking customers from trading a security—Defendants has breached these, among other, obligations and caused their customers substantial losses due solely to their own negligence and failure to maintain adequate infrastructure.

30.     Upon information and belief, Defendants pulled the Subject securities from their platforms in order to slow growth and help benefit individuals and institutions who are not Defendants customers but are Defendants large institutional investors or potential investors. These institutions have overwhelmingly shorted the equities in question and found themselves deeply underwater on their investments, often through the illegal use of naked shorts.

31.     On the morning on January 28, 2021, Plaintiff, a day trader, used Defendants' Robinhood applications as well as the TD Ameritrade platform in order to conduct business with multiple equities that had been placed under restriction, including but not limited to GME, BBBY, NOK, AMC, and BB.

32.     Plaintiff discovered that he could not place purchase orders for any of these equities and had been restricted from pre-market trading activity and was forced to helplessly watch as the value of his equities held plummeted in value with no potential to remediate the positions given the illegal sell pressure initiated by the colluding brokerages and firms.  Only large institutions and hedge funds were permitted to buy and sell.  Plaintiff watched each individual share of his GME equity fell from $470 to less than $250, watched as his holdings in

NOK fell almost 40%, his holdings in BB fell almost 60%, and positions in other restricted retailers including AMC suffered.  Thus, Plaintiff, like so many others, was forced into a situation by which he was essentially forced to sale his equities at a drastically reduced position given the new market condition set by these supposedly neutral brokerage houses, taking significant losses and being incapable of trading in these publicly held equities that he had performed significant due diligence and research on, and relied upon over the course of his job as a day trader.

33. Further, Plaintiff has been plagued by platform instability issues in recent weeks which has resulted in trade requests being lost without being executed, trade actions taken only after delays and changes to market conditions, and sell actions plaintiff had canceled being executed after cancelation due to instability of the trading platforms.  Plaintiff has also suffered through platform outages that has left him effectively blind to his equity positions for periods of time throughout the day, placing his holdings at risk.

## DAMAGES TO PLAINTIFFS AND THE PLAINTIFF CLASS

34. As a direct and proximate result of Defendants' conduct, Plaintiff and the class suffered financial losses, including but not limited to substantial losses in value of GME Nokia and Blackberry securities holdings, and other of the Subject Securities, and loss of profits from the growth of those securities, and other financial losses from locked out of the market so could not place calls in the future.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class, as defined below:

**National Class**

All citizens of the United States who own or owned accounts on Defendants' trading platforms and as of January 27, 2021 at 5 pm EST own or owned securities of "GME", "BB", "NOK", "AMC", "BBBY", "EXPR", and "KOSS" which Defendants did not allow the purchase of those securities on January 28, 2021 and for Defendant TD Ameritrade, on January 27, 2021.

**Colorado Class**

All citizens of the United States who own or owned accounts on Defendants' trading platforms and as of January 27, 2021 at 5 pm EST own or owned securities of "GME", "BB", "NOK", "AMC", "BBBY", "EXPR", and "KOSS" Defendants did not allow the purchase of those securities on January 28, 2021, and for Defendant TD Ameritrade, on January 27, 2021.

36. Excluded from the Class are the Defendants entities and their current employees, counsel for either party, as well as the Court and its personnel presiding over this action.

37. This action has been brought and may properly be maintained as a class action against Defendants pursuant to the provisions of Federal Rule of Civil Procedure 23.

38. Numerosity: The precise number of members of the proposed Class is unknown to Plaintiff at this time, but, based on information and belief, Class members are so numerous that their individual joinder herein is impracticable. Based on information and belief and publicly available reports, Class members number in the hundreds of thousands and up to ten million. Subclass members are likely in the thousands. All Class and Subclass members may be notified of the pendency of this action by reference to Defendants' records, or by other alternative means.

39. Commonality: Numerous questions of law or fact are common to the claims of Plaintiff and members of the proposed Class. These common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to the following:

   a. Whether Defendants knowingly failed to provide the financial services that were needed to handle reasonable consumer demand, including trading securities that

   are available on every other competitive trading platform;

  b. Whether Defendants failed to provide the duty of care to their customers when they purposefully removed GME;

  c. Whether Defendants removed GME purposefully to harm their customers' positions in GME and benefit their own potential financial gains;

  d. Whether Defendants violated FINRA Rule 5310, among other FINRA rules, state rules, and federal regulations; - don't forget 15 U.S.C. § 78

  e. Whether Defendants violated consumer protection laws in failing to disclose that their services would not include the ability to trade the Subject Securities, and other securities, for substantial periods of time;

  f. Whether Defendants were in breach of their legal, regulatory, and licensing requirements by failing to provide adequate access to financial services;

  g. Whether Defendants were in breach of their contracts and/or the implied covenant of good faith and fair dealing in connection with their failure to provide financial services;

  h. Whether Defendants were negligent or grossly negligent by failing to provide financial services in a timely manner;

  i. Whether Defendants breached their fiduciary duties to customers by failing to provide adequate access to financial services;

  j. Whether Defendants were unjustly enriched by their conduct;

  k. Whether Plaintiff and the other Class members were injured by Defendants' conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief.

  40. Typicality: The claims of the named Plaintiff are typical of the claims of the proposed Class in that the named Plaintiff was a customer during the class period and was unable to trade the Subject Securities and place time-sensitive trades on the Subject Securities and sustained damages as a result of Defendants' wrongful conduct.

  41. Adequate Representation: Plaintiff will fairly and adequately represent the interests of the Class in that he has no conflicts with any other Class members. Plaintiff has retained competent counsel experienced in prosecuting complex class actions, including those

involving financial services, and they will vigorously litigate this class action.

42. Predominance and Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. A class action is superior to other available means, if any, for the fair and efficient adjudication of this controversy. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant. Additionally, given the relatively modest damages sustained by most individual Class members, few, if any, proposed Class members could or would sustain the economic burden of pursuing individual remedies for Defendants' wrongful conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court. This class action presents no material difficulties in management.

43. Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which may produce incompatible standards of conduct for Defendants. 34. Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(B) because the prosecution of separate actions by individual members of the proposed Class would create a risk of adjudications with respect to individual Class members which may, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

44. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or equitable relief

appropriate with respect to the Class as a whole. 36. Class action certification is also warranted under Fed. R. Civ P. 23(b)(3) because questions of law or fact common to the Class members predominate over any questions affecting only individual members, and a Class action is superior to other available remedies for the fair and efficient adjudication of this controversy. The amount of damages available to the individual Plaintiff is insufficient to make litigation addressing Defendants' conduct economically feasible for most in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

45. Class action certification is also warranted under Fed. R. Civ P. 23(c)(4) because questions of law or fact common to the Class members may be certified and decided by this Court on a class wide basis.

## CLAIMS FOR RELIEF

### COUNT I
### (Breach of Contract)

46. Plaintiff restates and realleges the preceding paragraphs as if fully set forth here.

47. In order to use the Defendants trading platforms, a potential customer must enter into the Customer Agreement with Defendants.

48. Plaintiff and all class members did enter into a Customer Agreement with Defendants.

49. Defendants breached their Customer Agreements by, among other things, failing to disclose that their platforms were going to randomly pull a profitable stock from their

platform; that Defendants failed to provide adequate explanation to their customers; that Defendants knowingly put their customers at a disadvantage compared to customers who used other trading apps; that Defendants failed to provide access to their own financial incentives to pull certain Subject Securities including GME; that Defendants prohibited plaintiffs from performing in a timely manner (or at all) under the contract; that Defendants failed to comply with all applicable legal, regulatory, and licensing requirements; and that Defendants failed to exercise trades and actions requested by customers.

50. As such, Defendants breached their Customer Agreements with Plaintiff and Class members.

51. Defendants' failure to perform and their breaches of their Customer Agreements resulted in damages and losses to Plaintiff and Class members and continue to expose them to harm because Defendants continue to fail to perform under the Customer Agreements. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

**COUNT II**
**(Breach of the Implied Covenant of**
**Good Faith and Fair Dealing)**

52. Plaintiff restates and realleges the preceding paragraphs as if fully set forth here.

53. Plaintiffs and members of the Class entered into Customer Agreements with Defendants to open trading account. They agreed to Defendants' Terms and Conditions by using Defendants' website and trading platform.

54. Plaintiffs and members of the Class and Subclass fulfilled their obligations under these contracts by adhering to their terms and using Defendants' trading services through

their website and trading platform.

55. Defendants were obligated to provide the trading services required under those contracts at all times, including but not limited to, trades for the Subject Securities.

56. When initially signing up for Defendants, Plaintiff and all those similarly situated could and most actually did trade the Subject Securities.

57. Defendants unfairly interfered with the rights of Plaintiffs and members of the Class and Subclass to receive the benefits of the Customer Agreement by, among other things, (i) failing to provide services necessary to carry out a trade; (ii) failing to provide certain trading services whatsoever; (iii) failing to inform individuals in a timely member of the drastic changes in trading abilities; and (iv) prohibiting plaintiffs from buying Subject Securities for Defendants' own pecuniary interest and not disclosing those interest to Plaintiffs and all Class and Subclass members.

58. Defendants' conduct has caused Plaintiffs and members of the Class harm, losses, and damages. These losses reflect damages to Plaintiffs and members of the Class in an amount to be determined at trial or separate proceedings as necessary.

## COUNT III
### (Negligence)

59. Plaintiff restates and realleges the preceding paragraphs as if fully set forth here.

60. Defendants had a duty to exercise reasonable care in conducting and facilitating transactions for their customers.

61. Defendants had a duty to exercise reasonable care in providing trades on the free, open market for their customers.

62. Defendants unlawfully breached their duties by, among other things, (i) removing Subject Securities without notice from purchase through their trading applications; (ii) allowing

only sales of the Subject Securities without allowing purchases, (iii) failing to provide financial services related to Subject Securities; (iii) failing to notify customers in a timely manner of the Subject Securities "blackout."

63. Defendants' conduct as set forth in this Complaint was want of even scant care, and their acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct. Their actions breach any duty of care to their customers, but are also inconsistent with the standard of care expected from similar firms in the open market.

64. Upon information and belief, no institutions similar to Defendants have ever outright banned customers from purchasing a specific share of a specific security.

65. Defendants essentially abandoned their customers altogether by pulling Subject Securities, a standard of care so far below what is required for a business engaging in time sensitive trading services that it amounts to a complete abandonment of their duties.

66. Defendants' grossly negligent breaches of their duties owed to Plaintiffs and members of the Class proximately caused losses and damages that would not have occurred but for Defendants' gross breach of their duty of due care.

## COUNT IV
### (Breach of Fiduciary Duty)

67. Plaintiff restates and realleges the preceding paragraphs as if fully set forth here.

68. As a licensed provider of financial services, Defendants at all times relevant herein were fiduciaries to Plaintiff and Class members and owed them the highest good faith and integrity in performing their financial services on their behalf. Defendants also acted as fiduciaries to each and every customer who agreed to the Customer Agreement.

69. Defendants breached their fiduciary duties to Plaintiff and Class members by, among other things, failing to disclose that their platforms were going to remove Subject

Securities purchases in a timely manner; actually removing Subject Securities; removing Subject Securities for their own pecuniary benefit; that Defendants failed to provide access to their financial services in a timely manner; that Defendants failed to comply with all applicable legal, regulatory, and licensing requirements; and that Defendants failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

70. Defendants' conduct has caused Plaintiff and Class members' harm, losses, and damages and continues to expose them to harm because Defendants continues to breach their fiduciary duties. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT VII
### (Unjust Enrichment)

71. Plaintiff restates and realleges the preceding paragraphs as if fully set forth here.

72. Plaintiff and putative class members conferred a monetary benefit on Defendants. Specifically, they traded on Defendants' platforms for the economic benefit of Defendants.

73. Defendants knew that Plaintiffs and putative class members conferred a benefit on Defendants. Defendants profited from the purchases and used the Customer Data of Plaintiffs and putative class members for business purposes.

74. Defendants failed to manage their platforms so as to provide safe secure and non-manipulative securities trading.

75. If Plaintiffs and putative class members had known that Defendants would unlawfully halt trading in securities, they would not open and used accounts on Defendants' Platforms.

76. Plaintiff and putative class members have no adequate remedy at law.

77. Under the circumstances, it would be unjust for Defendants to be permitted to retain any of the benefits that Plaintiffs and putative class members conferred on it and that Chipotle received at the expense of Plaintiffs and putative class members.

78. Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and putative class members, proceeds that it unjustly received from them. In the alternative.

## COUNT VII
### (Non-Disclosure or Concealment)

79. Plaintiff restates and realleges the preceding paragraphs as if fully set forth here.

80. It is material information to Plaintiff and the class that Defendants would halt trading in a particular security at any time.

81. A reasonable person, under the circumstances, would regard this information as material information in deciding whether to use Defendants platform or trade on that platform.

82. Defendants failed to disclose and/or concealed this material information with the intent of creating a false or misleading impression in the minds of Plaintiff and the class.

83. Defendants failed to disclose and/or concealed the material information in Paragraph 32 above with the intent that the Plaintiffs and the named insured members of the class would take a course of action in using and trading on their platforms.

84. The reliance by Plaintiffs and the Plaintiff class was justified.

85. The reliance by Plaintiffs and the Plaintiff class caused injury and damage to Plaintiffs and the Plaintiff class.

86. As a direct and approximate result of Defendants above-mentioned acts, nondisclosure and/or concealment, Plaintiff and the class have suffered economic losses in the value of their security purchases, and other economic losses.

## COUNT VIII
**(Intentional Interference With Prospective Economic Advantage)**

87. Plaintiff restates and realleges the preceding paragraphs as if fully set forth here.

88. Plaintiff and the Class stood to make significant profit by virtue of their holdings in and future purchases of the Subject Securities.

89. Defendants intentionally interfered with future transactions in the Subject Securities in which the Plaintiff and the Class stood to profit.

90. This interference artificially depressed the price of shares in the Subject Securities, by not allowing retail customers to purchase these securities and sparking doubt about the security of future trading in these securities.

91. Defendants had actual knowledge that investors intended to enter into transactions involving the Subject Securities, and upon information and belief, were in fact motivated by that knowledge in restricting the trades.

92. This restriction of the ability of Plaintiff and the Class to trade in the Subject Securities caused substantial harm to Plaintiff and the Class.

## COUNT IX
**(Negligent Interference with Prospective Economic Advantage)**

93. Plaintiff restates and realleges the preceding paragraphs as if fully set forth here.

94. Plaintiff and the Class stood to make significant profit by virtue of their holdings in and future purchases of the Subject Securities.

95. Defendants negligently interfered with future transactions in these stocks whereby the Plaintiff and the Class stood to profit.

96. This interference artificially depressed the price of shares in the Subject Securities, by not allowing retail customers to purchase these securities and sparking doubt about

the security of future trading.

97.     Defendants had actual knowledge that investors intended to enter into transactions involving the Subject Securities, and upon information and belief, were in fact motivated by that knowledge in restricting the trades.

98.     This restriction of the ability of Plaintiff and the Class to trade in the Subject Securities caused substantial harm to Plaintiff and the Class.

## COUNT X
## (Violations Of 15 U.S.C. § 78)

99.     Plaintiff restates and realleges the preceding paragraphs as if fully set forth here

100.    Defendants violated 15 U.S.C § 78 by ways including:

a. effecting a series of transactions in the Subject Securities, creating actual or apparent active trading in such security, or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others;

b. inducing the purchase or sale of the Subject Securities, by the circulation or dissemination in the ordinary course of business of information to the effect that the price of any such security will or is likely to rise or fall because of market operations of any one or more persons conducted for the purpose of raising or depressing the price of the Subject Securities;

c. making for the purpose of inducing the purchase or sale of the Subject Securities statements which were at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, and which Defendants knew or had reasonable ground to believe was so false or misleading,

d.  including but not limited to that they presented an open market trading platform that would continuously operate so that free market trading would occur;

e. effecting a series of transactions for the purchase and/or sale of the Subject Securities for the purpose of pegging, fixing, or stabilizing the price of the Subject Securities in contravention of such rules and regulations of the Securities and Exchange Commission;

f. effecting manipulative short sale of securities, including the Subject Securities;

g. violating the rules of the Commission to prevent manipulation of price levels of the equity securities market or a substantial segment thereof;

    h. contributing significantly to extraordinary levels of volatility that have threatened the maintenance of fair and orderly markets; and reasonably certain to engender such levels of volatility;

    i. effecting transactions in, or to induce or attempt to induce the purchase or sale of, any security-based swap, in connection with which such person engages in any fraudulent, deceptive, or manipulative act or practice, makes any fictitious quotation, or engages in any transaction, practice, or course of business which operates as a fraud or deceit upon any person. 15 U.S.C. § 78i;

    j. effecting short sales, and using and employing stop-loss order in connection with the purchase or sale, of any security other than a government security, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, 15 U.S.C. § 78j;

    k. employing manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission. 15 U.S.C. § 78j.

101. As a direct and approximate result of Defendants above-mentioned acts, Plaintiff and the class have suffered economic losses in the value of their security purchases, and other economic losses.

102. The Certification required under 15 U.S.C. § 78 is attached at Appendix A.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court find in favor of them and the Class of similarly situated individuals and against Defendants as follows:

    a. Certify this case as a class action;

    b. Designate Plaintiff as Class Representative;

    c. Designate Plaintiffs' counsel of record as Class Counsel;

    d. Order appropriate equitable relief to remedy the inappropriate conduct;

    e. Award Plaintiff and all others similarly situated the full value of all damages sustained now or in the future as a result of Defendants' conduct;

    f.      Award Plaintiff and all others similarly situated all damages, interest, taxable costs and attorneys' fees recoverable under applicable laws;

    g.      Award Plaintiff and all others similarly situated punitive damages, compensatory and other damages;

    h.      Award Plaintiff and all others similarly situated any and all other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury.

Date: January 28, 2021                   Respectfully submitted,

/s/ Kevin S. Hannon
Kevin S. Hannon, #16015
The Hannon Law Firm, LLC
1641 Downing Street
Denver, Colorado 80218
khannon@hannonlaw.com
Tel: (303) 861-8800
Fax: (303) 861-8855